*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0212p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 06-5690

JAMES HENRY HUNT,

*Defendant-Appellant.*

---

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 98-20302—Jon Phipps McCalla, District Judge.

Submitted: May 30, 2007

Decided and Filed: June 7, 2007

Before: DAUGHTREY and MOORE, Circuit Judges; SHADUR, District Judge.[*]

---

## COUNSEL

**ON BRIEF:** Robert C. Brooks, Memphis, Tennessee, for Appellant. Stuart J. Canale, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

---

## OPINION

---

KAREN NELSON MOORE, Circuit Judge. Appellant-Defendant James Henry Hunt ("Hunt"), also known as Jamon Cameron Jones, pleaded guilty in 1998 to one count of fraudulent use of a social security number and one count of establishment of a controlled substances distribution operation. While released on bail before sentencing, Hunt fled. After being recaptured in 2006, Hunt was sentenced to 188 months in prison, three years of supervised release, and a $200 special assessment. Hunt now appeals his sentence, arguing that he merely allowed cocaine to be stored in his apartment and did not participate in any underlying drug offense, entitling him to a lower advisory Guidelines range pursuant to U.S. Sentencing Guideline § 2D1.8(a)(2). Because the district court did not clearly err in determining that Hunt was responsible for delivering the supply of cocaine found in his apartment and was thus not entitled to the benefit of Guideline § 2D1.8(a)(2), we **AFFIRM** the judgment of the district court.

---

[*] The Honorable Milton I. Shadur, United States District Judge for the Northern District of Illinois, sitting by designation.

1

# I. BACKGROUND

From 1997 to 1998, a Drug Enforcement Agency task force in Memphis, Tennessee investigated a drug trafficking organization operating out of Dallas, Texas led by Gregory Lewis ("Lewis"). As a result of the investigation, a federal grand jury issued an indictment for Lewis. While the task force was attempting to apprehend Lewis, Officer David McGriff ("McGriff"), then assigned to the task force, received information from a confidential informant that Lewis, who lived in Dallas, was currently staying in an apartment complex in the Harbor Town area of Memphis and had been seen in a car fitting a particular description. Through surveillance at the apartment complex, the task force was able to locate the car and learned that it had been leased by a rental car company to Eric Rollo Brown ("Brown"), who, McGriff knew, was the focus of a number of drug investigations.

On December 3, 1998, two people were seen leaving the apartment complex in Brown's car. Before leaving, Brown's car was seen parked in front of apartment number 301, and Officer McGriff learned from the realty leasing company that apartment 301 was leased to a man by the name of Jamon Jones ("Jones"). Through further investigation, Officer McGriff determined that Jones had provided someone else's social security number to the leasing company when he leased the apartment and to the local utility companies when he contracted for services.

While Officer McGriff was attempting to determine who had leased apartment 301, two people returned in Brown's car. Police officers approached the car and saw that Lewis was driving, but the officers did not recognize the passenger. The passenger provided the officers with a Tennessee Department of Safety identification card that identified him as Jamon Jones, and Lewis and Jones were both placed under arrest. Later investigation revealed that Jones was actually Appellant-Defendant James Henry Hunt, although Hunt's name had to that point never come up in the course of the task force's investigation.

Thereafter, Officer McGriff obtained a search warrant for apartment 301. When the police executed the warrant, they discovered approximately $48,000 stuffed in the ceiling, cocaine residue in the bathroom, cooking utensils in the kitchen that also had cocaine residue and appeared to be used for making crack cocaine, several suitcases, and some clothes. Officer McGriff testified that the apartment appeared to be "a temporary place for individuals to live while they were in the process of distributing narcotics" and not anyone's full-time residence. Joint Appendix ("J.A.") at 61 (Sentencing Hr'g at 13 (McGriff Test.)). Also inside the apartment was one person, Tremaine Farris ("Farris"), who was placed under arrest.

Officer McGriff questioned Farris that evening and again the next day, December 4, 1998. Officer McGriff testifed that Farris told him that Farris, Lewis, and Hunt distributed cocaine in the Memphis area, including approximately twenty kilograms of cocaine that had been brought to Memphis and distributed from apartment 301 within the last several days. Officer McGriff also testified that Farris "described Mr. Lewis' role as the person that was distributing the cocaine in the Memphis area, and Mr. Hunt is the person who was furnishing the cocaine from Texas to be distributed in Memphis." J.A. at 62 (Sentencing Hr'g at 14 (McGriff Test.)). Farris further told Officer McGriff that one kilogram of cocaine had been returned to the apartment because it was of poor quality, and Farris was attempting to make crack out of that kilogram of cocaine.

Officer McGriff also questioned Hunt, who agreed to cooperate with the authorities. Hunt entered into a plea agreement with the government, and on December 22, 1998, Hunt pleaded guilty to an information that charged him with one count of fraudulent use of a social security number, in violation of 42 U.S.C. § 408(a)(7)(B), and one count of establishment of a controlled substances distribution operation, in violation of 21 U.S.C. § 856. Hunt was released on bond, but failed to

report to the pretrial services office in January and February 1999. A warrant was issued for his arrest, and Hunt remained a fugitive until February 2006.

In February 1999, Officer McGriff was contacted by Joe Hunt, James Henry Hunt's brother. Joe Hunt was being prosecuted in federal court in Dallas, Texas, and wanted to secure favorable treatment by providing information about his brother. Officer McGriff testified that he promised to advise the U.S. Attorney's office in Dallas if any of the information provided by Joe Hunt was useful, and Joe Hunt detailed his brother's drug activities. According to Officer McGriff, Joe Hunt stated that James Henry Hunt "was bringing cocaine or providing cocaine to the Memphis area to several people," including Eric Rollo Brown. J.A. at 65 (Sentencing Hr'g at 17 (McGriff Test.)). Officer McGriff also testified that Joe Hunt said that he, Joe Hunt, had come to Memphis after his brother's arrest and discussed with Brown a recent delivery of twenty kilograms of cocaine brought to Memphis by Gregory Lewis and James Henry Hunt. Among other things, Joe Hunt discussed with Brown one kilogram of cocaine that had been determined to be of poor quality.

James Henry Hunt was rearrested in February 2006, and his case proceeded to sentencing. Hunt filed objections to the presentence report prepared in 1999, arguing, *inter alia*, that he should have a base offense level of 16, pursuant to Guideline § 2D1.8(a)(2), because he "had no participation in the underlying controlled substance offense other than allowing use of the premises." U.S. SENTENCING GUIDELINES MANUAL (U.S.S.G.) § 2D1.8(a)(2) (1998). The government filed a response, and on May 15, 2006, the district court held a sentencing hearing, during which the court concluded that Hunt was not entitled to the benefit of Guideline § 2D1.8(a)(2) and calculated Hunt's advisory Guidelines range using a base offense level of 34. The district court sentenced Hunt to 188 months in prison, three years of supervised release, and a $200 special assessment, and Hunt timely appealed.

## II. ANALYSIS

### A. Standard of Review

On appeal, we must determine whether a district court's sentencing determination was reasonable, *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005), *cert. denied*, --- U.S. ---, 126 S. Ct. 1110 (2006), which includes review of the district court's Guidelines calculations, *United States v. Davidson*, 409 F.3d 304, 310 (6th Cir. 2005). "[We] review[] the district court's application of the United States Sentencing Guidelines de novo and the district court's findings of fact at sentencing for clear error." *United States v. Tocco*, 306 F.3d 279, 284 (6th Cir. 2002), *cert. denied*, 539 U.S. 926 (2003); *see also Davidson*, 409 F.3d at 310. The district court properly applied the preponderance-of-the-evidence standard in making its findings of fact. *See United States v. Ferguson*, 456 F.3d 660, 665 (6th Cir. 2006); *United States v. Mayle*, 334 F.3d 552, 556-57 (6th Cir. 2003).

### B. Guideline § 2D1.8(a)(2)

Hunt argues that, pursuant to Guideline § 2D1.8(a), the Guideline provision which applies to defendants convicted under 21 U.S.C. § 856, the district court should have calculated the applicable advisory Guidelines range using a base offense level of 16 rather than 34. The 1998 version[1] of Guideline § 2D1.8(a), provides:

---

[1] The district court applied the 1998 version of the U.S. Sentencing Guidelines Manual, and neither party has argued that this was in error. Moreover, calculation of Hunt's Guidelines range is the same under the 1998 version and the 2006 version.

(a)　Base Offense Level:
　　　(1)　The offense level from § 2D1.1 applicable to the underlying controlled substance offense, except as provided below.
　　　(2)　If the defendant had no participation in the underlying controlled substance offense other than allowing use of the premises, the offense level shall be 4 levels less than the offense level from § 2D1.1 applicable to the underlying controlled substance offense, but not greater than level 16.

U.S.S.G. § 2D1.8(a) (1998).  An application note to Guideline § 2D1.8 provides further guidance:

Subsection (a)(2) does not apply unless the defendant had no participation in the underlying controlled substance offense other than allowing use of the premises.  For example, subsection (a)(2) would not apply to a defendant who possessed a dangerous weapon in connection with the offense, a defendant who guarded the cache of controlled substances, a defendant who arranged for the use of the premises for the purpose of facilitating a drug transaction, a defendant who allowed the use of more than one premises, a defendant who made telephone calls to facilitate the underlying controlled substance offense, or a defendant who otherwise assisted in the commission of the underlying controlled substance offense.  Furthermore, subsection (a)(2) does not apply unless the defendant initially leased, rented, purchased, or otherwise acquired a possessory interest in the premises for a legitimate purpose.

U.S.S.G. § 2D1.8 cmt. n.1 (1998).

The district court concluded that subsection (a)(2) did not apply in this case.  During the sentencing hearing, the district court quoted one particular portion of Hunt's 1998 plea colloquy:

[Question:]  And you allowed your apartment to be used to store cocaine?
Answer:  Yes, sir.
Question:  What was the reason you allowed your apartment to be used in that way?
Answer:  To make money.

J.A. at 83-84 (Sentencing Hr'g at 35-36) (quoting J.A. at 45 (Plea Hr'g at 15)).  The district court stated that this portion of Hunt's plea colloquy was by itself sufficient to warrant the conclusion that Guideline § 2D1.8(a)(2) did not apply.

Reviewing de novo the district court's interpretation of the Guidelines, we conclude that the quoted portion of Hunt's plea colloquy was not by itself sufficient to preclude application of Guideline § 2D1.8(a)(2).  The criminal statute to which Hunt pleaded guilty on count two, 21 U.S.C. § 856, does not require as an element of the crime that Hunt participated in a drug offense in any way beyond allowing cocaine to be stored in his apartment.[2]  Hunt's plea colloquy is also insufficient to establish any participation in a drug offense beyond accepting money in exchange for

---

[2] Title 21, U.S.C. § 856 states, in relevant part:
(a)　Except as authorized by this subchapter, it shall be unlawful to—
　　　(1)　knowingly open or maintain any place for the purpose of manufacturing, distributing, or using any controlled substance;
　　　(2)　manage or control any building, room, or enclosure, either as an owner, lessee, agent, employee, or mortgagee, and knowingly and intentionally rent, lease, or make available for use, with or without compensation, the building, room, or enclosure for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance.
21 U.S.C. § 856.

allowing cocaine to be stored in his apartment.  Neither the language of Guideline § 2D1.8(a) nor the application note suggests that a defendant who accepts money but takes no other actions in support of a drug offense is not entitled to the benefit of Guideline § 2D1.8(a)(2).

However, the district court did not end its analysis with Hunt's plea colloquy.  The district court concluded that "[t]he information provided as to the statements by Mr. Farris and Mr. Joe Hunt completely corroborates and expounds on the defendant's own statements at the time of the plea colloquy."  J.A. at 84 (Sentencing Hr'g at 36).  The district court "accept[ed] the testimony that [James Henry Hunt] was the source of the cocaine that was being distributed, that he was the person from Texas who was the supplier of cocaine to Gregory Lewis who was then distributing it to others in the Memphis area."  *Id.*  The district court also noted that this testimony was corroborated, at least in part, by the facts that scales, cocaine residue, and a large amount of money were found inside the apartment, that Hunt used a false social security number, and that Hunt used an alias when first detained, apparently to attempt to avoid detection.

Hunt does not argue that these factual findings are insufficient as a matter of law to establish that he was not entitled to the benefit of Guideline § 2D1.8(a)(2), but instead argues that the district court clearly erred in making its factual findings.  Hunt argues that McGriff's recounting of the statements of Farris and Joe Hunt was hearsay and that Farris and Joe Hunt were co-conspirators and thus inherently unreliable.

Guideline § 6A1.3(a) permits the district court to "consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy."  U.S.S.G. § 6A1.3(a) (1998).  This court has explicitly stated that the district court may consider hearsay in sentencing, but the district court must "find[] it to have sufficient or minimally adequate indicia of reliability."  *United States v. Silverman*, 976 F.2d 1502, 1513 (6th Cir. 1992) (en banc), *cert. denied*, 507 U.S. 990 (1993); *see also United States v. Gibbs*, 182 F.3d 408, 441 (6th Cir.), *cert. denied*, 528 U.S. 1051 (1999).  Moreover, "[d]ue to a co-conspirator's 'strong motivation to implicate the defendant and to exonerate himself,' a co-conspirator's statements about the defendant's involvement in the crime should be viewed with 'special suspicion.'"  *United States v. Gomez-Lemos*, 939 F.2d 326, 330 (6th Cir. 1991) (quoting *Lee v. Illinois*, 476 U.S. 530, 541 (1986)); *see also Hill v. Hofbauer*, 337 F.3d 706, 717 (6th Cir. 2003) (noting that statements made to the police by a co-conspirator require "closer scrutiny," in part because such statements may be "motivated by a desire to curry the favor of law enforcement officials").  Thus, the statements of Farris and Joe Hunt required, as hearsay, sufficient indicia of reliability in order to support the district court's conclusion, and were even more suspect as statements by co-conspirators made out of an explicit or implicit desire to secure favorable treatment from the police.  *See United States v. Huckins*, 53 F.3d 276, 279 (9th Cir. 1994) (concluding that a hearsay statement of a co-conspirator had no indicia of reliability and thus could not properly be considered in sentencing).

Nevertheless, we conclude that the district court did not clearly err by determining that the statements of Farris and Joe Hunt were supported by sufficient indicia of reliability.  First, the two statements, given independently and months apart, corroborate each other, including such details as the fact that one kilogram of cocaine supplied by Hunt was returned because it was of poor quality.  *Cf. Silverman*, 976 F.2d at 1513-14 (concluding that statements from a confidential informant and from a co-conspirator were sufficiently reliable for sentencing purposes because the two statements corroborated each other).  Second, Hunt's use of a false social security number when leasing the apartment, the evidence of drug trafficking found inside the apartment, and Officer McGriff's testimony that it did not appear that anyone lived in the apartment provide circumstantial evidence that Hunt leased and used the apartment as a participant in a drug trafficking operation, and not as a resident.  *Cf. United States v. Bowen*, 194 F. App'x 393, 401-02 (6th Cir. 2006) (unpublished opinion) (concluding that the testimony of co-conspirators that the defendant helped

prepare and sell crack cocaine from a particular residence was corroborated by Pyrex containers found in the residence that were "consistent with the cooking of powder cocaine into crack" and bills and tax returns linking the defendant to the residence), *petition for cert. filed*, No. 06-8324 (Dec. 6, 2006). Accordingly, the district court did not clearly err by relying on the statements of Farris and Joe Hunt. Moreover, in the absence of evidence contradicting the statements of Farris and Joe Hunt and the corroborating evidence discovered in the search of the apartment, we conclude that the district court did not clearly err by determining that the preponderance of the evidence showed that James Henry Hunt was responsible for delivering the supply of cocaine found in the apartment.

## III.  CONCLUSION

Because the district court did not clearly err in determining that Hunt was responsible for delivering the supply of cocaine found in his apartment and was thus not entitled to the benefit of Guideline § 2D1.8(a)(2), and because no apparent basis to challenge the reasonableness of the district court's sentence exists, we **AFFIRM** the judgment of the district court.