NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0605n.06

No. 09-5043

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

Aug 26, 2009

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF KENTUCKY |
| | ) | |
| CALVIN MANIS, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE:    KEITH, SUTTON, and WHITE, Circuit Judges.

**DAMON J. KEITH, Circuit Judge.**  Defendant-Appellant Calvin Manis pleaded guilty to one count of being a licensed firearms dealer who failed to maintain records of transactions at his place of business in violation of 18 U.S.C. §§ 922(m) and 924(a)(3)(B).  At sentencing, the district court found that Manis falsified his records to conceal sales of firearms to a convicted felon in violation of 19 U.S.C. § 922(d), which resulted in an increase in his advisory guideline range pursuant to U.S.S.G. § 2K2.1.  He was sentenced to 12 months of imprisonment, the statutory maximum, ordered to pay a $15,000 fine and given a 12-month term of supervised release.  Manis challenges his sentencing on appeal.  He argues the district court incorrectly considered incriminating hearsay testimony in finding he sold firearms to a prohibited person and that the district court's finding that he intended to conceal unlawful firearm sales lacked evidentiary support.  For the following reasons, we AFFIRM the district court's sentencing order.

**I.**

Defendant-Appellant Calvin Manis ("Manis") was a pharmacist and a federally licensed firearms dealer. He owned and operated the Parkway Pharmacy, located in Barbourville, Kentucky, which also housed a small gun shop. Manis was indicted for various federal firearm offenses following a investigation conducted by the Bureau of Alcohol, Tobacco, and Firearms ("ATF") that originally focused on the conduct of Manis' friend, William Phillips ("Phillips"),[1] but later expanded to include Manis as well. Manis ultimately pleaded guilty[2] to one count of being a licensed firearms dealer who failed to maintain records of transactions at his place of business, in violation of 18 U.S.C. §§ 922(m) and 924(a)(3)(B).[3]

The Pre-Sentence Investigation Report ("PSR") computed Manis' proposed guideline range under U.S.S.G. §2K2.1. The base offense level for firearms record-keeping violations of 18 U.S.C. § 922(m) is six. U.S.S.G. § 2K2.1(a)(8). Section 2K2.1(b)(7) instructs, however, "If a recordkeeping offense reflected an effort to conceal a substantive offense involving firearms or ammunition, increase to the offense level for the substantive offense." The probation officer who

---

[1]William Phillips is incorrectly identified throughout the transcript of the sentencing hearing, as well in the parties' briefs on appeal, as "William Phipps" and "William" or "Willie Phelps." *United States v. Manis*, No. 6:08-115-DCR, 2009 WL 301943, *2 n.4 (E.D. Ky. Feb. 2, 2009).

[2]Manis' original indictment and subsequent plea deal are explained in detail in *Manis*, 2009 WL 301943, at *1.

[3]18 U.S.C. § 922(m) states, "It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector knowingly to make any false entry in, to fail to make appropriate entry in, or to fail to properly maintain, any record which he is required to keep pursuant to section 923 of this chapter or regulations promulgated thereunder." 18 U.S.C. § 924(a)(3) sets a maximum of one year imprisonment for licensed firearms dealers who violate 18 U.S.C. § 922(m).

prepared the PSR concluded that Manis' records concealed violations of 18 U.S.C. § 922(d), which,

*inter alia*, prohibits the sale of firearms to any person whom the seller knows or has reasonable cause

to believe "is under indictment for, or has been convicted in any court of, a crime punishable by

imprisonment for a term exceeding one year." 18 U.S.C. § 922(d)(1). The probation officer

specifically found Manis made unlawful straw sales to Phillips, a convicted felon, using Phillips'

wife as the purchaser of record.[4] Accordingly, a base offense level of 14 was established for Manis.

*See* U.S.S.G. § 2K2.1(a)(6)(B), (b)(7), n.9.[5] A six-level enhancement was added in light of evidence

that Phillips' wife had purchased 41 firearms on behalf of her husband. *See* U.S.S.G. §

2K2.1(b)(1)(C).[6]

After factoring in a three-level reduction for acceptance of responsibility, the PSR established

a total offense level of 17 which – combined with a criminal history category of I – resulted in an

advisory guideline range of 24 to 30 months of imprisonment. The probation officer ultimately

recommended a sentence of 12 months of imprisonment – the statutory maximum. *See* 18 U.S.C.

§ 924(a)(3)(B).

---

[4] A "straw" transaction occurs when a federal firearms licensee knowingly allows someone to purchase a firearm on behalf of a prohibited person.

[5] Section § 2K2.1(a)(6)(B) sets a base offense level of 14 if the defendant was convicted under 18 U.S.C. § 922(d). Application note 9 of § 2K2.1 states, "Under subsection (b)(7), if a record-keeping offense was committed to conceal a substantive firearms or ammunition offense, the offense level is increased to the offense level for the substantive firearms or ammunition offense (*e.g.*, if the defendant falsifies a record to conceal the sale of a firearm to a prohibited person, the offense level is increased to the offense level applicable to the sale of a firearm to a prohibited person)."

[6] Section 2K2.1(b)(1)(C) increases the offense level by six when the offense involved between 25 and 99 firearms.

Manis objected to the PSR based on the increases in offense level effected by U.S.S.G. § 2K2.1(b)(7) and (a)(6)(B). In relevant part, he argued that incriminating hearsay statements attested to by ATF Agent Thomas Chittum ("Agent Chittum") from Phillips regarding Manis' straw sales were not credible, and thus, could not be relied upon during sentencing. Implicit in his objection was that his base offense should have remained at six prior to any reductions for acceptance of responsibility. Manis also took issue with the PSR's conclusion that he kept the firearms records at his residence to conceal unlawful transactions. He contended the records were maintained there because of remodeling at the pharmacy.

At Manis' sentencing hearing on January 5, 2009, the government reasserted the conclusions of the PSR and argued Manis concealed 41 straw sales to Phillips. The district court summarized the government's relevant evidence presented at sentencing:

> The United States presented the testimony of Thomas Chittum, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and Thomas Black, a lay witness who had purchased a number of firearms through William Phillips, during the January 5, 2009, sentencing hearing. In addition, thirteen exhibits were offered and admitted for the Court's consideration. Through the testimony of Special Agent Chittum, the United States established that Defendant Manis has sold approximately 41 firearms to Phillips, a felon, using his wife has [sic] a straw purchaser. Special Agent Chittum's investigation revealed that, around 2000, Phillips had attempted to purchase a firearm legitimately through a pawn shop located in Corbin, Kentucky. However, after the background check revealed his felony conviction, Phillips had his wife fill-out [sic] paperwork for later purchases from Defendant Manis. Although Special Agent Chittum did not believe that Phillips provided truthful or accurate statements concerning all aspects of his investigation, he was able to confirm that Manis knew Phillips was a felon and engaged in straw purchases to transfer numerous weapons to him. Special Agent Chittum testified that,
>
>> A. [SA Chittum] He was denied because he was a convicted felon. Mr. Phipps [sic] knew that he couldn't pass a background check again, so he said that his wife did the paperwork for him. He hemmed

and hawed some and said, well, sometimes she bought them as gifts, but eventually acquiesced and said, no, she basically does whatever I tell her and whenever I want a gun, she goes and fills out the paperwork for it. And he told me that he and she did that with Mr. knowledge and consent.

Q. And at any point, did Mr. Phipps [sic] relay to you whether or not he had informed Mr. Manis about this NICS ["National Instant Criminal Background Check System"] denial?

A. Yes, he told me that he had.... He told me that he told Mr. Manis that he had tried to purchase a firearm and had been denied by the NICS background check and he said he thought it was because of criminal charges he had faced in federal court. Mr. Manis suggested that Phipps [sic] have his record expunged, to take it off his record. In fact, Mr. Phipps [sic] did try and have his record expunged here in federal court, it was denied. But he continued to purchase firearms through his wife rather than attempt another background check.

Special Agent Chittum subsequently obtained a search warrant for Defendant business, Parkway Pharmacy. During the search of the Pharmacy, Special Agent Chittum discovered the affidavit he had prepared in connection with an earlier search of Phillips' home. And when questioned by Special Agent Chittum, Manis admitted that he had sold a number of firearms to Phillips, knowing that he was a convicted felon.

A. [SA Chittum] When I interviewed him, he said that he had known both of them [ i.e., Phipps [sic] and Kenny Sizemore] for a long time, admitted that they came in there and got firearms. He said that he believed that maybe about ten or so of the guns had been gifts for the Phipps [sic] son, Kendall, but that he knew that most of them were not and that it was them coming in and getting them. He admitted that Phipps [sic] had told him that he [*i.e.*, Phillips] had once been denied on a NICS background check.

\* \* \*

Q. And did Mr. Manis confirm to you that he, indeed, sold Barbara Phipps [sic] firearms knowing that the actual purchaser or the person coming in and ordering the gun, the person paying for the gun, was actually William Phipps [sic]?

> A. Yes. But to say that he sold them to Barbara Phipps [sic] I think overstates it. He says that Barbara filled out the paperwork but that Phipps [sic] would come in and pick them out, that on occasion Phipps came in and picked them up himself, even though Barbara had done the paperwork.
>
> Q. And did Mr. Manis confirm to you that William Phipps [sic] always paid for the firearms?
>
> A. Yes, and the [sic] he required him to pay up front because he was afraid that he would not get paid.
>
> Q. And did Mr. Manis confirm to you that William Phipps [sic] would tell Manis what type of firearm he would like to purchase and then Manis would order the specific firearm?
>
> A. Yes. And Phipps [sic] told me the same thing, that Mr. [] business was essentially special order. Mr. Manis told me the same thing, that he didn't maintain an inventory but rather ordered firearms on an as-needed basis.

*Manis*, 2009 WL 301943, at *3-4 (denying Manis' motion for release pending appeal) (citations to the record omitted).

During cross-examination, Agent Chittum conceded he did not find Phillips to be an "honest witness" and deemed him to have "very low credibility." The government's other witness Gary Black, who had purchased guns from Phillips, also considered Phillips to be a "liar" and a "con artist." Manis did not testify at the sentencing hearing.

The sentencing court found by a preponderance of evidence that Manis knowingly allowed straw purchases by Phillips through Phillips' wife. While acknowledging the credibility questions surrounding Phillips, the court found that his testimony on the issue of straw purchases contained "sufficient indicia of reliability." It also found that the preponderance of evidence established that

Manis maintained his firearms records in his residence to conceal the illegal transactions, rather than to protect them during the remodeling of his pharmacy. Thus, the sentencing court overruled Manis' objections to the PSR and adopted its findings. After considering the 18 U.S.C. § 3553(a) factors and allocution arguments, the court issued a statutory maximum sentence of 12 months of imprisonment, fined Manis $15,000, and imposed a 12-month term of supervised release. Manis filed a timely notice of appeal and challenged the sentencing order.

## II.

"On appeal, we must determine whether a district court's sentencing determination was reasonable, which includes review of the district court's Guidelines calculations." *United States v. Hunt*, 487 F.3d 347, 350 (6th Cir. 2007). We review the district court's application of the Sentencing Guidelines *de novo* and the district court's findings of fact at sentencing, including the determination of whether hearsay statements have "sufficient indicia of reliability," for clear error. *See id.* at 350, 353 (reviewing whether hearsay statements "were supported by sufficient indicia of reliability" for clear error). The district court's factual findings must be supported by a preponderance of evidence. *See, e.g.*, *United States v. Ferguson*, 456 F.3d 660, 665 (6th Cir. 2006).

## III.

Manis first argues on appeal that the district court clearly erred in finding that he engaged in straw purchases with Phillips, a convicted felon, in violation of 18 U.S.C. § 922(d). He specifically claims the district court improperly relied upon hearsay testimony from Agent Chittum, who recounted incriminating statements made to him by Phillips about Manis, which indicated that Manis knowingly engaged in the prohibited transactions. Manis submits Phillips was not credible and, thus,

the hearsay statements offered by Agent Chittum were "unreliable." Accordingly, Manis maintains

that the lower court violated his due process rights by considering the testimony.[7]

In general, a sentencing court "may consider relevant information without regard to its

admissibility under the rules of evidence applicable at trial." U.S.S.G. § 6A1.3(a); *see* 18 U.S.C. §

3661 (stating "[n]o limitation shall be placed on the information concerning the background,

character, and conduct of a person convicted of an offense which a court of the United States may

receive and consider for the purpose of imposing an appropriate sentence."). Thus, it is well-

established that a sentencing court may consider hearsay testimony. *See United States v. Hamad*,

495 F.3d 241, 246 (6th Cir. 2007). Nevertheless, due process requires that the factual findings

supporting sentencing "have some minimal indicium of reliability." *United States v. Silverman*, 976

F.2d 1502, 1504 (6th Cir. 1992) (en banc) (quoting *United States v. Baylin*, 696 F.2d 1030, 1040 (3d

Cir. 1982)). This standard presents a "relatively low hurdle," and comports with the Sentencing

Guidelines requirement that information considered by the sentencing court, including hearsay, must

have "sufficient indicia of reliability to support its probable accuracy." *United States v. Greene*, 71

F.3d 232, 235 (6th Cir. 1995) (partially quoting U.S.S.G. § 6A1.3); s*ee also United States v. Bates,*

315 F. App'x 591, 594 (6th Cir. 2009).

---

[7]When asked at oral argument if the defendant was waiving this hearsay argument, Manis counsel responded in the affirmative on the ground that it conflicted with this Court's recent decision in *United States v. White*, 551 F.3d 381 (6th Cir. 2008) (en banc). But *White* only held that acquitted conduct could be considered at sentencing. *Id.* at 385. This principle is inapposite to Manis' separate argument that the district court should not have considered Phillips' incriminating hearsay statements because they supposedly lacked reliability. It appears that counsel was actually waiving a third argument made below that the straw sales to Phillips were not relevant conduct at sentencing because those charges were not included in his superceding indictment. Given the ambiguity over the waiver, we accord Manis' hearsay argument appellate review.

At sentencing, Agent Chittum testified to various statements by Phillips regarding the latter's straw purchases from Manis. Phillips specifically indicated that he could not pass a background check necessary to purchase a firearm because of a prior felony conviction. To circumvent this obstacle, Phillips had his wife "fill out the paperwork for him" while Phillips continued to select and pay for the guns at the Parkway pharmacy. Agent Chittum testified that Phillips confirmed that Manis was aware that Phillips had failed a prior background check due to his felony conviction and that Phillips' firearms purchases through his wife were done with "Manis'[] knowledge and consent." The district court relied upon Phillips' statements in finding "abundant information that would cause the Court to believe that straw purchases were taking place from Mr. Manis through Mrs. Phipps [sic] to a prohibited person, that being Mr. Phipps [sic]." (Sentencing Tr. 78).

As noted above, Manis argues that Phillips hearsay statements offered through Agent Chittum were "unreliable" and should have been disregarded by the district court at sentencing. In support of this claim, Manis calls attention to Agent Chittum's assessment that Phillips was not an "honest witness" and was considered to have "very low credibility." Manis also points out that Gary Black described Phillips as a "liar" and a "con artist" at sentencing. Without the incriminating statements from Phillips, Manis claims the district court lacked an adequate basis for concluding Manis made straw sales to Phillips under the preponderance of evidence standard.

But as the government correctly points out, Manis' contention rests "upon the faulty premise that the district court made findings by considering only Phipps's [sic] statements." While hearsay statements by those, such as Phillips, who may seek to "curry the favor of law enforcement" require "closer scrutiny," see *Hill v. Hofbauer*, 337 F.3d 706, 717 (6th Cir. 2003), corroborating evidence

can provide questionable statements with a sufficient indicia of reliability. *See Hunt*, 487 F.3d at 353. In this case, Manis completely ignores the corroborative force of his own statements, which were also conveyed by Agent Chittum at sentencing. Specifically, Manis admitted to Agent Chittum: (1) he sold firearms to Phillips' wife knowing the actual purchaser was Phillips, as Phillips was the person selecting and paying for the guns; and (2) Phillips told Manis that he had been previously denied on a firearms background check. This testimony alone is sufficient to support the reliability of Phillips' claims that Manis knowingly engaged in straw sales. *See Bates*, 315 F. App'x at 594-95 (finding an informant's hearsay regarding drug quantity sufficiently reliable because, in part, it was corroborated by defendant's own admission of his involvement in drug trafficking).

In light of the ample evidence supporting Phillips' assertions of straw purchases from Manis, it cannot be maintained that they lacked "sufficient indicia of reliability" under the deferential standard of review employed by this Court on questions of fact. Therefore, we rule that the district court did not clearly err in finding by a preponderance of the evidence that Manis engaged in unlawful straw purchases with a prohibited person in violation of 18 U.S.C. § 922(d)(1).

**IV.**

Manis also takes issue with the sentencing court's application of U.S.S.G. § 2K2.1(b)(7) on the ground that his record-keeping offense was not an "effort to conceal" straw sales. He alleges that he kept the firearms records in his home because his business premises were being remodeled rather than to conceal the transfer of the firearms to Phillips' wife. Manis claims that the government offered no evidence to prove intent to conceal at sentencing and, as a result, the district court's adverse finding on the matter necessarily lacked evidentiary support.

We have held that "[w]hen a defendant fails to produce any evidence to contradict the facts set forth in the PSR, a district court is entitled to rely on those facts when sentencing the defendant." *United States v. Geerken*, 506 F.3d 461, 467 (6th Cir. 2007). The PSR in the case at bar stated that Phillips "acknowledged that he saw paperwork relating to firearms sales and a logbook at the defendant's residence approximately one year prior to [the] interview." The district court specifically relied on this information to find Manis made an "effort to conceal" unlawful straw transactions, noting that the extended period during which the records were stored at his home undermined Manis' position that they were kept there because of the remodeling of his small shop. (Sentencing Tr. 77-78). Because Manis failed to offer evidence to rebut the relevant factual assertion set forth in the PSR, he cannot claim the district court erred in relying upon that fact when it applied § 2K2.1(b)(7). *See Geerken*, 506 F.3d at 467. Accordingly, we conclude the district court's determination that Manis intended to conceal straw sales by keeping the records at his residence was not clear error.

## V.

For the foregoing reasons, the district court's sentencing order is **AFFIRMED**.