NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0497n.06

No. 23-1020

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>Dec 04, 2023<br>KELLY L. STEPHENS, Clerk |
| Plaintiff-Appellee, | ) |  |
| | ) |  |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| WILLIAM RAY GARDNER, | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellant. | ) |  |
| | ) | OPINION |
| | ) |  |

Before: BATCHELDER, GRIFFIN, and BLOOMEKATZ, Circuit Judges.

ALICE M. BATCHELDER, Circuit Judge. William Gardner pleaded guilty to being a felon in possession of a firearm after police caught him with a twenty-eight-round handgun. The district court imposed a within-guidelines, sixty-month sentence. Gardner appeals, alleging two errors. First, he says that the district court improperly relied on unproven conduct without making the required factual finding. And second, Gardner claims the district court was wrong to rely on hearsay from a state-court employee who interpreted a state-court printout as showing that Gardner served more than sixty days for a 2011 conviction. But neither challenge satisfies the standard to show the district court committed reversible error when it imposed Gardner's sentence. We affirm.

**I.**

While on routine patrol, Detroit Police Department officers observed Gardner who had, protruding from his waistband, a handgun equipped with a high-capacity magazine. The officers pursued Gardner, who discarded the handgun under a vehicle. The handgun was a nine-millimeter Glock with twenty-eight live rounds of ammunition. It was illegal for Gardner to possess a gun

because he has been convicted of three felonies: (1) attempted delivery or manufacturing of a controlled substance in Detroit, Michigan in 2013; (2) possession of heroin with intent to distribute in Pittsburgh, Pennsylvania in 2014; and (3) first-degree home invasion in Detroit, Michigan, in 2015. A federal grand jury indicted Gardner for violating 18 U.S.C. § 922(g)(1).

The district court released Gardner pending trial, but it later revoked pre-trial release based on three events. First, a female victim (Victim 1) heard a gunshot—and later discovered a bullet hole in her car—as she drove away from a fight with Gardner. Second, Victim 1 reported that Gardner hit her on the right side of her face hard enough to draw blood. And third, a second female victim (Victim 2) reported that, after she saw Gardner abuse Victim 1, Gardner purposely drove an SUV into the side of the Victim 2's car while she and her children were inside. Later that same day, Gardner threatened to kill Victim 1, struck her with his fist hard enough to draw blood and cause swelling, and shattered the windows of her car. At a revocation hearing, the district court found probable cause to believe these events had occurred, determined Gardner was a danger to the public, and ordered him detained pending trial.

Gardner ultimately pleaded guilty to being a felon in possession of a firearm. Prior to sentencing, he raised only two objections to his Presentence Investigation Report (PSR). First, Gardner argued that his home-invasion conviction is not for a crime of violence, which would remove two points from his offense level. Second, he argued that his 2011 conviction for operating a vehicle while impaired resulted in a jail-term of less than sixty days, which would remove one point from his criminal-history calculation. At sentencing, Gardner made an additional argument: Because no criminal charges resulted from the events that caused the district court to revoke pre-trial release, the district court should not increase Gardner's sentence based on them.

The government did not contest Gardner's offense-level objection. As to his second objection, the government encouraged the district court to find that Gardner served a seventy-day sentence for his 2011 conviction. It relied on a conversation the probation officer had with a state-court employee who helped the officer interpret the state-court record. The district court determined that the preponderance of the evidence showed that Gardner had served sufficient time for the 2011 conviction to add two criminal-history points. As to the additional argument Gardner raised at sentencing, the government discussed reasons why the bond-violation incidents had not led to criminal charges. The government also encouraged the district court to rely on the violations in setting Gardner's sentence.

The district court ultimately imposed a sixty-month, within-guidelines sentence. It discussed the nature and circumstances of Gardner's instant offense. In discussing Gardner's history and characteristics, the district court at several points referenced Gardner's "rash decisions." But it tempered this discussion by noting that Gardner received strong support from his family throughout his time before the district court.

On appeal, Gardner makes two challenges to his sixty-month sentence. First, Gardner claims that the district court committed reversible error by failing to make a factual finding that his bond-violation conduct actually occurred. Second, Gardner challenges the district court's factual finding that he served more than a sixty-day jail sentence for his 2011 conviction. We address each argument in turn.

## II.

We review challenges to a sentence's procedural or substantive reasonableness under an abuse-of-discretion standard. *United States v. Freeman*, 640 F.3d 180, 185 (6th Cir. 2011). A district court abuses its discretion when we are "left with the 'definite and firm conviction that

the trial court committed a clear error of judgment.'" *United States v. Hunt*, 521 F.3d 636, 648 (6th Cir. 2008) (*Hunt II*). This requires more than a mere belief that "a different sentence was appropriate." *Gall v. United States*, 552 U.S. 38, 51 (2007). Instead, we must give "due deference" to the district court's weighing of the § 3553(a) factors. *Id.* Within-guideline sentences are also "rebuttably presumed to be reasonable." *United States v. Brooks*, 628 F.3d 791, 796 (6th Cir. 2011). And to the extent that a sentence relies on factual findings, we review those findings for clear error. *United States v. Hunt*, 487 F.3d 347, 350 (6th Cir. 2007) (*Hunt I*).

We begin with Gardner's first argument. He claims that the district court committed reversible error by not making a factual finding after he "objected" to the district court's reliance on his bond-violation conduct. But Gardner never objected to the probation office's including this conduct in the PSR. Our criminal rules require defendants to file written objections to information in a PSR that the defendant considers inaccurate. Fed. R. Crim. P. 32(f)(1). If a defendant does not do so, the district court can treat the "undisputed portion" as a "finding of fact." Fed. R. Crim. P. 32(i)(3)(A). And that is all that happened here.

Recall that Gardner made only two objections to the PSR. He first objected to treating home invasion as a crime of violence for purposes of the two-level enhancement, an objection that the government did not contest. And second, he objected to the PSR's report that he spent more than sixty days in jail for a 2011 impaired-driving conviction. In response to Gardner's second objection, the district court made an explicit factual finding about that issue. But Gardner never objected to the PSR's description of the conduct for which the district court revoked his bond.

Instead, Gardner argued at sentencing that the district court should not consider his bond violation when determining the appropriate sentence for him. This argument is not the same as objecting to a finding in the PSR. To preserve a challenge to the findings in a PSR, Gardner needed

to object to the information as the criminal rules require. *United States v. Metcalfe*, 581 F.3d 456, 459 (6th Cir. 2009). He did not do so. His argument at sentencing was that the district court should not consider the undisputed portion of the PSR—not that the conduct never happened.

The district court did not err when it rejected Gardner's argument. As he admits on appeal, sentencing courts may weigh uncharged criminal conduct when determining the appropriate sentence. *United States v. Rayyan*, 885 F.3d 436, 441 (6th Cir. 2018). The precedent Gardner cites requiring the district court to make factual determinations applies only when a defendant affirmatively disputes the accuracy of the PSR. *See, e.g.*, *United States v. Shannon*, 803 F.3d 778, 788 (6th Cir. 2015) (defendant disputed the government's fraud-loss calculation). And again, while Gardner encouraged the district court not to consider his bond violations, he never contended that the PSR's description was inaccurate—just that the conduct never led to convictions. So the district court was free to consider the PSR's recitation of Gardner's bond violations when determining his sentence. In other words, the district court did not abuse its discretion.

Gardner's second argument fares no better than his first. He says that the district court committed clear error when it accepted the probation officer's second-hand account of Gardner's state criminal-history record. But Gardner's argument is foreclosed by binding precedent. For one thing, district courts "routinely" rely on hearsay to find certain facts during a sentencing hearing. *United States v. Armstrong*, 920 F.3d 395, 398 (6th Cir. 2019). For another, by not calling the state-court supervisor as a witness at sentencing, Gardner intentionally relinquished the opportunity to cross-examine him. *Id.* at 400.

Garder's argument arises from a quirk in the formatting of Michigan state docket sheets. Sometimes a line-break occurs in the middle of a docket event or description that makes that entry easy to misunderstand. This potential for misunderstanding led the probation officer to contact the

state-court supervisor for clarification. And the docket sheet supports exactly what the state-court supervisor explained: Gardner pleaded guilty to operating a vehicle while visibly impaired. The state court first placed him on probation for twelve months. Later, Gardner entered Michigan's drug-treatment program. After Gardner failed to report to the court and failed to comply with required urine screens, the state court sentenced Gardner to ninety-three days in jail with credit for the eleven days he spent in jail before making bond. After Gardner spent fifty-nine additional days in jail, the state court held a review hearing and sentenced him to time served. Altogether, Gardner spent more than sixty days in jail: eleven days from arrest to making bond and fifty-nine days after drug-court termination. *See* U.S.S.G. § 4A1.2(k). The more-than-sixty-day sentence means that this conviction counts for two criminal history points. U.S.S.G. § 4A1.1(b).

Gardner's objection is based on reading one line of the docket sheet out of context. That line reads, "dress out." According to Gardner, that line means that the state court released him instead of sentencing him to the additional ninety-three-day jail term. But the preceding line provides required context. Together, those two lines of the state-court docket read, "No early program, no administrative release dress out." So rather than release him, the state court imposed a jail sentence that totaled more than sixty days.

Contrary to Gardner's argument on appeal, the state-court supervisor's testimony aligns with the docket sheet. The district court did not err in finding reliable both the docket sheet and the state-court supervisor's explanation of it. *Armstrong*, 920 F.3d at 398. Moreover, Gardner could have introduced testimony from the state-court supervisor at his sentencing hearing. Gardner cannot claim that the state-court supervisor's testimony is unreliable when it is supported by the state-court docket and Gardner chose not to call the state-court supervisor to testify. *Id.* at 400.

Because the district court did not err in crediting the state-court supervisor's reported statement,

we must reject Gardner's second argument on appeal too.

## III.

For the foregoing reasons, we affirm the judgment of the district court.